UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FREDERICK E. ADDISON,

        Petitioner,

v.                                      Case No. 5:19-cv-121-BJD-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner, Frederick E. Addison, an inmate of the Florida penal system, initiated this action pro se on March 4, 2019 (mailbox rule), by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1; Petition). Petitioner challenges a state court (Citrus County) judgment of conviction resulting from a violation of probation (VOP) charge. See Petition at 8.

Petitioner raises one ground for relief: an ineffective assistance of counsel claim. Id. at 5, 9. Respondents filed a response, conceding the Petition is timely and the sole claim exhausted (Doc. 13; Petition Resp.).[1] See Petition

---

[1] The appendix will be cited as follows: "App. Ex." followed by the exhibit's letter designation (A through X). Exhibit C spans two separate docket entries (Docs. 14-2 through 14-3), but it has been separately paginated. Thus, page numbers for Ex.

Resp. at 7, 9, 13. Petitioner did not file a reply, though the Court afforded him an opportunity to do so. <u>See</u> Order (Doc. 6).

## II. Governing Legal Principles

### A. Habeas Standard

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254. "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016) (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review under § 2254 is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of a federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for its decision to qualify as an adjudication on the merits. <u>Harrington v. Richter</u>, 562 U.S. 86,

---

C are those stamped on the bottom of each page. Page numbers to other exhibits are those assigned by the Court's electronic case management system unless otherwise specified.

100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the district court should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . . [and] presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claim on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The burden of proof is high; "clear error will not suffice." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Woods v. Donald, 575 U.S. 312, 316 (2015)). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." § 2254(e)(1). As such, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013).

The AEDPA standard is meant to be difficult to surmount. Richter, 562 U.S. at 102. A habeas petitioner must demonstrate "the state court's ruling ... was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." <u>Meders v. Warden, Georgia Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir.), <u>cert. denied sub nom.</u> <u>Meders v. Ford</u>, 140 S. Ct. 394 (2019) (alteration in original). A district court's obligation is to "train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." <u>Id.</u> (citing <u>Wilson</u>, 138 S. Ct. at 1191-92). A federal district court must give appropriate deference to a state court decision on the merits. <u>Wilson</u>, 138 S. Ct. at 1192. Appropriate deference requires the court to defer to the reasons articulated by the state if they are reasonable. <u>Id.</u>

### B. Ineffective Assistance of Counsel

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. <u>See</u> Petition at 5. "The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show (1) counsel's performance was outside the wide range of reasonable, professional assistance, and (2) counsel's deficient performance

4

prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. The prejudice prong requires a showing that there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. <u>Id.</u> at 695.

When a petitioner claims his counsel was ineffective, "[r]eviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). When the "strong presumption" standard of <u>Strickland</u> is applied "in tandem" with the highly deferential AEDPA standard, a review of the state court's determination as to the "performance" prong is afforded double deference. <u>Richter</u>, 562 U.S. at 105.

Accordingly, the question for a federal court is not whether trial counsel's performance was reasonable, but "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u> If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," a federal court may not disturb a state-court decision denying the claim. <u>Id.</u> As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## III. Facts & Analysis

In 2009, Petitioner was charged by amended information with six counts: burglary of a dwelling while armed (Count I); burglary of a dwelling – standard dwelling (Count II); burglary of a conveyance (Count III); aggravated assault with a deadly weapon (Count IV); grand theft (Count V); and battery (Count VI).[2] App. Ex. A at 11-13. As alleged, on March 13-14, 2019, Petitioner remained in a dwelling co-owned by Melanie Weaver and Kassie Weaver,[3] without their permission, while armed with a knife, and with intent to commit an assault. Id. at 11. He also remained in Kassie Weaver's car without her permission with intent to commit theft. Id. Additionally, the amended information alleged Petitioner threatened Kassie Weaver with a knife, intentionally touched or struck her, and stole her computer. Id. at 12.

On October 5, 2009, Petitioner entered a plea of no contest to all counts, and the state court sentenced him to ten years' probation as a habitual felony offender. App. Ex. B; Ex. C at 70-75. The armed burglary charge alone carried a life sentence for Petitioner. App. Ex. B. Just over six years into his sentence,

---

[2] The State dismissed the original information because the victim could not be located and would not cooperate with the prosecution. App. Ex. C at 52, 57-58, 60; App. Ex. U at 244.

[3] Kassie Weaver was dating Petitioner at the time of the incident. App. Ex. U at 244. Her first name is spelled differently throughout the record—as "Kassie," "Cassie," and "Casey." See, e.g., App. Ex. A at 11; App. Ex. C at 23-24, 32, 64, 81; App. Ex. U at 234. It appears the correct spelling is "Kassie." App. Ex. C at 39.

Petitioner violated the terms of his probation by having tested positive for cocaine. App. Ex. C at 114-15, 155, 183-84. Petitioner also admitted to selling cocaine. Id. at 115. After a VOP hearing, the trial court adjudicated Petitioner guilty, revoked his probation, and sentenced him to life in prison on the armed burglary charge. Id. at 128, 130-34, 138, 155. Petitioner also was sentenced on the other charges, the sentences of which were to run concurrently with his life sentence. Id. at 141-53.

In his Petition before this Court, Petitioner asserts his attorney, Melissa Pendergrass, failed "to depose and call [the] victim/witness to provide mitigating testimony at [his VOP] hearing." See Petition at 9. According to Petitioner, the victim, Ms. Kassie Weaver, recanted her statement to police and would have testified in his favor at the VOP hearing by acknowledging that she had "conjured up the criminal allegations" against him in retaliation for his infidelity. Id. at 9-10. Petitioner says he provided his attorney Ms. Weaver's name and address before his VOP hearing, but she (his attorney) "made no attempt to locate [her]." Id. at 10, 11. Petitioner believes that had Ms. Weaver testified at his VOP hearing, the judge would have "either reinstated his probation or imposed a bottom of the guideline sentence." Id. at 12. Petitioner contends his attorney's deficiency prejudiced him because "counsel could have used the testimony of Ms. Weaver to demonstrate . . . that

the charged offenses for which he was placed on probation lacked veracity." Id. at 11.

Respondents counter that the trial court's "detailed order," entered after an evidentiary hearing, was not contrary to established federal law and was not based on an unreasonable determination of the facts. See Petition Resp. at 15-16.

A review of the state-court record shows Petitioner raised this claim as the sole ground in his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). App. Ex. O. The state court summarily denied the motion, App. Ex. P, and the Fifth District Court of Appeal (Fifth DCA), in a per curiam opinion, reversed because the record did not conclusively rebut Petitioner's claim, App. Ex. S. The Fifth DCA directed the state court to hold an evidentiary hearing on remand. Id. The state court appointed counsel for Petitioner, App. Ex. T, and held an evidentiary hearing, App. Ex. U.

At the evidentiary hearing, Petitioner said Ms. Weaver would have testified that "none of this never [sic] really took place" and that he and Ms. Weaver were having "a domestic dispute" that day. Id. at 237. Ms. Weaver testified at the evidentiary hearing. Id. at 244. Ms. Weaver said she would have testified as follows had she been called as a witness at the VOP hearing: "I

8

think that he's [Petitioner's] a good person when he's not on drugs"; "[h]e sticks up for others"; "[h]e's loyal . . . respectful . . . [and] funny." <u>Id.</u> at 246-47. Ms. Weaver also would have testified that she remained in contact with Petitioner after the original charges were filed. <u>Id.</u> at 247. On cross-examination, Ms. Weaver described Petitioner as "agitated," "kinda mean," and "aggressive" when on drugs, and she believed he was under the influence of cocaine the night of the subject incident in 2009. <u>Id.</u> at 248, 249-50.

Ms. Pendergrass testified at the evidentiary hearing that Petitioner mentioned Ms. Weaver had written a letter in which her "story had changed," but Petitioner was not sure whether Ms. Weaver sent the letter to probation or the prosecutor. <u>Id.</u> at 255. Ms. Pendergrass said she was "unable to locate" any such letter after checking with probation and the prosecutor. <u>Id.</u> at 256. She also said she did not have contact information for Ms. Weaver in her notes, and she did not recall Petitioner asking her to subpoena Ms. Weaver for the VOP hearing.[4] <u>Id.</u> at 257, 258.

---

[4] Notably, at the VOP hearing, Ms. Pendergrass mentioned to the judge that Petitioner believed "there was a letter that was in the possession of Probation that the victim had [written] recanting . . . the allegations." App. Ex. C at 218. The prosecutor did not recall hearing of such a letter, and said, "I do not recall [the witness] ever denying the facts." <u>Id.</u> at 217, 218. The judge looked through the probation file at the hearing and announced, "I have looked through every letter cover to cover, every entry, every piece of paper in that file. There is no such letter." <u>Id.</u> at 219.

At the evidentiary hearing, and after Ms. Weaver testified, the judge asked Ms. Pendergrass questions suggesting he would not have been persuaded differently had Ms. Weaver testified at the VOP hearing. First, the judge asked, "The only issue [at the VOP hearing] was whether or not [Petitioner] tested positive for cocaine?" Id. at 258-59. Ms. Pendergrass responded affirmatively. Id. at 259. Second, after Ms. Pendergrass summarized what Petitioner's argument would have been had Ms. Weaver testified at the VOP hearing, the judge asked Ms. Pendergrass, "Was it your analysis that [Petitioner] had already received a below guidelines disposition from [the prosecutor] on a negotiated plea likely because of Ms. [K]assie Weaver?" Id. Ms. Pendergrass again responded affirmatively. Third, the judge asked Ms. Pendergrass whether she heard Ms. Weaver's testimony—offered just before Ms. Pendergrass's own—that she (Ms. Weaver) believed Petitioner was agitated, on a scale of seven out of ten, when under the influence of cocaine. Id. 260. Ms. Pendergrass again responded affirmatively. Id.

The court denied Petitioner's Rule 3.850 Motion. App. Ex. U at 268; App. Ex. V. The Fifth DCA affirmed the decision without opinion. App. Ex. Y. Under Wilson, this Court presumes the Fifth DCA adopted the reasoning of the trial court. See Wilson, 138 S. Ct. at 1192. As such, the Court will "look through"

the unexplained opinion to the postconviction court's order on Petitioner's Rule 3.850 Motion. Id.[5]

At the conclusion of the evidentiary hearing, the judge told Petitioner, "[I]t is absolutely inconceivable that there would have been any relevance or … materiality to … [K]assie Weaver coming into the [VOP] sentencing" because Ms. Pendergrass had no recollection of Petitioner asking that she arrange for Ms. Weaver to testify, Ms. Pendergrass arranged for two probation officers to testify, which was "far more probative," and Petitioner lied to the probation officer who administered the drug test, telling her he only sold cocaine but did not himself use it. App. Ex. U at 266. The judge also said:

> I wouldn't care if [Ms. Weaver] came in and threw herself on the floor crying for your release saying it was all lies, that all this stuff was lies. She never said it was a lie. She said when you're not on cocaine, you're a decent person, but when you're on cocaine, you're agitated on the scale of one to ten at a seven.

Id. at 267. The judge orally denied Petitioner's Rule 3.850 Motion. Id. at 268.

In his written order, the judge set forth the applicable two-prong Strickland test, App. Ex. V at 2-3, 5,[6] and found Ms. Pendergrass, who was

---

[5] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[6] Page numbers for exhibit V are those at the bottom, center of each page, not those assigned by the Court's electronic case management system.

"qualified as an expert in criminal law," id. at 4, was not ineffective for failing to call Ms. Weaver as a witness, id. at 5. After summarizing the testimony offered at the evidentiary hearing, the court explained:

> The [Petitioner] advised Ms. Pendergrass of the possible existence of a letter that neither he nor his attorney had; and he never requested his attorney to contact her as a potential witness. Moreover, the [Petitioner] has failed to demonstrate Ms. Weaver's testimony would have changed the outcome of his VOP hearing.

Id.

Upon a thorough review of the record and the applicable law, the Court concludes the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). As such, under AEDPA's deferential standard, Petitioner is not entitled to habeas relief.

Accordingly, it is now

**ORDERED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[7] The **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of December 2021.

BRIAN J. DAVIS
United States District Judge

Jax-6 12/23
c:      Frederick Addison
        Counsel of Record

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

13